UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re Robert E. Young,<br><br> *Debtor/Appellee*,<br><br>v.<br><br>United States of America,<br><br> *Appellant*. | Civil Case No. 25 CV 6316<br>Adversary Proceeding: 23-AP-270<br><br>Judge Lindsay C. Jenkins |

**MEMORANDUM OPINION AND ORDER**

  This appeal arises from an adversary proceeding Debtor Robert Young initiated in connection with his Chapter 13 bankruptcy. The appeal concerns only one issue:[1] whether Young's income tax debts for tax years 2007 and 2008 were dischargeable under the Bankruptcy Code.

  Applying *In re Payne*, 431 F.3d 1055, 1057 (7th Cir. 2005), the bankruptcy court concluded that the tax debts were not dischargeable because no reasonable fact finder could conclude that Young filed his 2007 and 2008 tax returns with the IRS before the IRS prepared its own returns for him under 26 U.S.C. § 6020(b) in August 2013. [Dkt. 8-4 at 71.][2] This, in turn, meant that as a chapter 13 debtor, Young could not discharge the debts under 11 U.S.C. § 523(a)(1)(B)(i) of the Bankruptcy Code.

  Young now appeals, arguing that genuine disputes of material fact exist about when the IRS received his returns. [Dkt. 9 at 4.] For the following reasons, the bankruptcy court's grant of summary judgment is vacated, and the case is remanded for further proceedings.

---

[1] Young's apparent attempt to challenge on appeal whether the IRS's "continued offsets" of his "post-bankruptcy refunds to satisfy a fully paid 2008 tax debt," is waived. "Waiver occurs when a party intentionally relinquishes a known right." *Lukaszczyk v. Cook County*, 137 F.4th 671, 674 (7th Cir. 2025). A party can waive an argument, among other ways, by failing to raise the issue or argument in the court below. *Bradley v. Village of University Park*, 59 F.4th 887, 897 (7th Cir. 2023). Here, as the United States points out and Young does not dispute, he did not raise this issue before the bankruptcy court at summary judgment, *see* dkt. 8-4 at 73, so he cannot raise it now.

[2] Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents. The court could not locate some parts of the record that were submitted in connection with the parties' summary judgment submissions to the bankruptcy court, even though that material should have been designated as part of the record on appeal. In those instances, the court cites to the docket in the adversary proceeding directly as "*Young*, 1:23-ap-270, dkt. ___."

I.  **Background**

The court summarizes the facts as presented, which are undisputed except where otherwise noted. [Dkt. 8.]

The parties filed cross motions for summary judgment concerning, among other things, the dischargeability of Young's federal income taxes for tax years 2007 and 2008. Young sought a determination that these debts are not excepted from discharge under § 523(a)(1)(B)(i). [*Young*, 1:23-ap-270, dkt. 23.] The United States sought a determination that they are excepted because the IRS received his Forms 1040 for tax years 2007 and 2008 after it prepared his § 6020(b) returns in August 2013. [*Young*, 1:23-ap-270, dkt. 25.]

Specifically, according to the United States, the IRS did not receive Young's 2007 and 2008 returns until December 22, 2014. To support its position, the United States cites to the declaration of Roberto Hernandez, an IRS employee who explains that the IRS sent Young deficiency letters (sometimes called 90-day letters) for tax years 2007 and 2008 in November 2013 and then assessed his income taxes for those years on March 31, 2014. [*Young*, 1:23-ap-270, dkt. 25-3 at 2–3, ¶¶ 3–4, 8.] According to Hernandez's declaration, if Young had filed his returns before March 31, 2014, that fact would be reflected in IRS records using the notation "Return Filed & Tax Assessed." [*Id.*, ¶¶ 9–10.] Instead, the IRS prepared and filed "dummy returns for each year on March 19, 2013," which were posted to Young's account on April 15, 2013. [*Id.*, ¶ 10.]

According to Hernandez's declaration, these events are reflected in several internal IRS records including Young's 2007 and 2008 Account Transcripts. [*Young*, 1:23-ap-270, dkts. 25-10, 25-11] As Hernandez explained, Account Transcripts are simply "another way of presenting information for a tax period for a taxpayer." [*Young*, 1:23-ap-270, dkt. 25-3 at 3–4, ¶ 13.] Both Account Transcripts reflect the following entries:

| Return Due Date Or Received Date (Whichever Is Later) | Mar. 19, 2013 |
| --- | --- |
| Return Processing Date | Apr. 15, 2013 |

[*Young*, 1:23-ap-270, dkts. 25-10 at 1 (2007); 25-11 at 1 (2008).]

On August 26, 2013, the IRS mailed Young deficiency letters enclosing the returns it prepared under § 6020(b) for both tax years; these documents are "treated as a return for purposes of calculating penalties." [*Young*, 1:23-ap-270, dkt. 25-3 at 4, ¶¶ 15–16.]

2

In connection with this adversary proceeding, Hernandez located a scanned copy of Young's 2007 Form 1040. [*Id.*, ¶ 18.] The first page contains a "received" stamp on the bottom left corner that, according to Hernandez, means the form was first stamped received by the IRS in Fresno, California on December 22, 2014. [*Young*, 1:23-ap-270, dkt. 25-3 at 4, ¶ 18; dkt. 25-14 at 1.] Hernandez could not locate a copy of the 2008 Form 1040, but because there is no dispute that Young mailed both forms to the IRS in the same envelope, the IRS concludes that the 2008 Form 1040 was also received on December 22, 2014. [Dkt. 15 at 11.]

Young disagrees with this sequencing. In his sworn responses to the United States' statement of material facts, he avers that he "mailed both the 2007 and the 2008 tax returns in the same envelope before 03/19/2013." [*Young*, 1:23-ap-270, dkt. 30 at 4-5.] According to him, during discovery, the United States produced documents (Bates stamped "USA_0448-USA_0461") that include, among other things, (a) his 2007 Form 1040; and (b) a handwritten envelope addressed to the IRS in Fresno, California that is, ostensibly, the envelope used to mail the returns to the IRS. The markings on that envelope include a December 16, 2014 metered postage paid stamp and a "12/22/2014" date stamp. [*Young*, 1:23-ap-270, dkt. 23-5 at 15.] Young attached these records, including the envelope, to his summary judgment motion. [*Id.*] Still, he maintains the envelope "shows no connection" to him because it lacks a return address and it is not written in his handwriting. [*Young*, 1:23-ap-270, dkt. 30 at 5.]

Young also relies on the Account Transcripts to show that the IRS received the returns on March 19, 2013. According to him, the notation "Return Due Date Or Received Date" coincides with his sworn statement that the IRS received his 2007 and 2008 returns on March 19 because he mailed them before that day. [Dkt. 9 at 4–5.] He also explains that findings "from the Independent Office of Appeals" show that the 2007 return was "filed and received" but not located until "as late as December 2014." [Dkt. 16 at 8; *Young*, 1:23-ap-270, dkt. 23-2 at 14 ("Around December 22, 2014 … Debtor's 2007 tax return was located but never processed.").]

## II. Standard of Review

A federal district court has jurisdiction to hear appeals from "final judgments, orders, and decrees" of a bankruptcy court under 28 U.S.C. § 158(a). In reviewing the bankruptcy court's decision to grant summary judgment, the court's review is *de novo*, applying the same standard for summary judgment that the bankruptcy court applied. *See Dick v. Conseco, Inc.*, 458 F.3d 573, 577 (7th Cir. 2006). The court reviews "the bankruptcy court's factual findings for clear error and its legal conclusions *de novo.*" *Dick*, 458 F.3d at 577 (cleaned up).

"The standards of Rule 56 of the Federal Rules of Civil Procedure apply to summary judgment in bankruptcy proceedings." *Id.* (cleaned up). So "summary judgment should not be granted unless there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* (citing Fed. R. Civ.

3

P. 56(c)). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, all facts and reasonable inferences are construed in the light most favorable to the nonmoving party. *See Chaib v. Geo Grp., Inc.*, 819 F.3d 337, 341 (7th Cir. 2016). It is "axiomatic that district courts presiding over summary judgment proceedings may not weigh conflicting evidence or make credibility determinations, 'both of which are the province of the jury.'" *Whitaker v. Dempsey*, 144 F.4th 908, 917 (7th Cir. 2025).

### III. Analysis

Young argues that the bankruptcy court erred in granting summary judgment to the United States because there is a genuine dispute of fact about when the IRS received his 2007 and 2008 tax returns. Young's tax debts are not dischargeable under *In re Payne* if he filed his 2007 and 2008 tax returns with the IRS after the IRS prepared the § 6020(b) returns in August 2013.

#### A. *In re Payne*

Section 523(a)(1)(B)(i) of the Bankruptcy Code "forbids the discharge of federal income tax liability with respect to which a 'return' was required to be filed but 'was not filed." *In re Payne*, 431 F.3d at 1056. At issue in *Payne* was "whether a debtor may obtain a discharge in bankruptcy from a tax debt owed to the [IRS] if he failed to file a return until after the IRS assessed the tax that he owed." *Id*. Payne did not file his 1986 tax return until 1992, and by then, the IRS had already investigated and assessed Payne $20,000 in tax liability. *Id*. Payne later filed for bankruptcy, seeking a discharge. *Id*.

To be deemed a return, the Seventh Circuit explained, a document filed with the IRS must (1) purport to be a "return," (2) be signed under penalty of perjury, (3) contain enough information to enable the taxpayer's tax liability to be calculated, and (4) evince an honest and genuine endeavor to satisfy the law. *Id*. at 1057 (cleaned up) (citing *Zellerbach Paper Co. v. Helvering*, 293 U.S. 172, 180 (1934)). In concluding that the fourth condition had not been satisfied, the Court observed that a debtor's late-filed return "was not a reasonable effort to satisfy the requirements of the tax law, namely, the requirements of filing a timely return and paying the amount of tax calculated on the return." *In re Payne*, 431 F.3d at 1057. Because the IRS had already calculated the tax owed, Payne had not spared "the tax authorities the burden of trying to reconstruct a taxpayer's income and income-tax liability." *Id*. So the document Payne filed was not a "return" for purposes of allowing him to discharge his tax liabilities in bankruptcy. *Id*. at 1058.

4

### B. Application

Young argues that he submitted evidence from which a fact finder could reasonably find that he filed both returns before August 26, 2013. The first piece of evidence he points to is his sworn response to the United States' statement of material facts, where he says that he "mailed both the 2007 and the 2008 tax returns in the same envelope before 03/19/2013." [*Young*, 1:23-ap-270, dkt. 30 at 4–5, 10; Dkt. 8-4 at 71.] The United States acknowledges that this evidence is sworn, but argues it is a self-serving certified filing insufficient to survive summary judgment. [Dkt. 15 at 8, 13 (citing *Davis v. Gallagher*, 951 F.3d 743, 750 (6th Cir. 2020)).]

"Testimony is often self-serving." *Jones v. Lamb*, 124 F.4th 463, 468 (7th Cir. 2024). At summary judgment, a party asserting that a fact is genuinely disputed— here, the date Young mailed the tax returns—must support that assertion in some way. "The party can do so by citing to particular parts of materials in the record, including ... affidavits or declarations." *Id.* (citing Fed. R. Civ. P. 56(c)(1)(A)). A statement "subscribed as true by the declarant under penalty of perjury may support an assertion if the declaration is made on personal knowledge, sets out facts that would be admissible in evidence, and shows that the ... declarant is competent to testify on the matters stated." *Jones*, 124 F.4th at 468 (cleaned up) (citing Fed. R. Civ. P. 56(c)(4); 28 U.S.C. § 1746.))

Here, Young's sworn response to the United States' statement of material facts concerning the date that he mailed the returns satisfies this requirement. [*Young*, 1:23-ap-270, dkt. 30 at 4–5, 10; Dkt. 8-4 at 71.] The asserted fact is within his personal knowledge and thus supported by adequate foundation. *Fletcher v. Doig*, 145 F.4th 756, 764 (7th Cir. 2025) ("we have repeatedly stressed that summary judgment should be denied even when a non-movant's opposition is based upon self-serving statements, so long as they are supported by adequate foundation such as personal knowledge.") *Sanders v. Moss*, 153 F.4 557, 562 n.4 (7th Cir. 2025) ("we accept self-serving testimony on summary judgment so long as it based on personal knowledge.") The court cannot, therefore, disregard the fact "merely because it served his interests." *Jones*, 124 F.4th at 468.

There is also no question that his assertion about when he mailed the returns is material. If credited, the statement could mean that the fourth *Payne* factor is satisfied because the IRS would have received the returns before it prepared the § 6020(b) returns in August.

The United States urges the court to conclude that Young's statement about when he mailed the returns does not create a *genuine* dispute of fact. According to the United States, the dispute is not genuine because it offered testimony in the form of Hernandez's declaration explaining the meaning of the date entries in the IRS's documents, including Hernandez's explanation about the meaning of the "Return Due Date or Return Received Date" entry in the Account Transcripts. Young misinterprets

5

that entry to mean the IRS received his returns on March 19, 2013 when really, it says, this is the date the IRS filed dummy returns. [Dkt. 15 at 10.] It also points out that Young is not an IRS employee and lacks personal knowledge about IRS recordkeeping and data entry, whereas Hernandez's declaration is grounded in his familiarity with IRS records and procedures, including what the relevant dates in the Account Transcripts mean. [Dkt. 15 at 12-13.]

This argument ignores an important tenet of summary judgment—it cannot be used to resolve swearing contests between litigants. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Nor is Young's account is "so flawed and so self-contradictory that no reasonable jury could resolve in his favor the factual disputes." *Whitaker*, 144 F.4th at 917 (explaining the utter-implausibility exception to the general prohibition on resolving factual disputes at summary judgment, which is "reserved for the exceptional and extreme case"). In particular, Young argues that his sworn statement about when he mailed the returns "coupled with contemporaneous transcript entries" and viewed with the benefit of reasonable inferences drawn in his favor, supports the conclusion that the returns were received on March 19. [Dkt. 16 at 7.] He argues that certain of the IRS's records are ambiguous, missing or incomplete, and that the IRS has offered shifting and inconsistent explanations over the years about the date of receipt. [Dkt. 19 at 7–8.] For example, he notes that the IRS admits it cannot locate the date stamped 2008 tax return even though it is undisputed that both returns were mailed together. [Dkt. 16 at 7.] He argues that his sworn statement about when he mailed the returns is consistent with the Account Transcripts' language, and he says that evidence of the December 22, 2014 date stamp on the first page of the 2007 return does not preclude the "possibility of [an] earlier submission," particularly given the misplaced 2008 return. [Dkt. 16 at 7.]

Summary judgment is not warranted on this record. Young maintains, through admissible evidence, that he mailed the returns to the IRS in a single envelope in early 2013. The United States, on the other hand, points to evidence suggesting that the returns were received in late 2014. A reasonable fact finder might conclude that the December 22 date-stamp on the first page of the 2007 return (or other evidence[3]) means that's when the IRS first received both documents. Or the fact finder might conclude that Young mailed the forms in early 2013 and the IRS misplaced or misfiled

---

[3]     Young points out that the bankruptcy court relied on a disputed piece of evidence in granting summary judgment: the envelope that Young included in the record purporting to be the one used to mail the returns to the IRS in December 2014. [*Young,* 1:23-ap-270, dkt. 23-5 at 15.] The bankruptcy court's analysis explained that the envelope reflects "that the return was mailed on December 16, 2014, and received on December 22, 2014," and observed that the "overwhelming weight of the evidence [supported] the IRS's conclusion" that the return was received in December 2014 as revealed in Young's own exhibit. [Dkt. 8-4 at 76.] This evidence is disputed. Young claims that the envelope is not his handwriting and contains no return address information. [*Young,* 1:23-ap-270, dkt. 30 at 5.]

them, as evidenced by the IRS's admitted inability to locate a copy of the original date-stamped 2008 return. [Dkt. 15 at 11.]

It's true that as a lay witness, Young must have personal knowledge of any matter he would testify about. *See* Fed. R. Evid. 602. And at trial, he will not have the benefit of all reasonable inferences being drawn in his favor. But it's not correct to say that Young's account of events amounts to an "unsubstantiated belief as to what the evidence means." [Dkt. 15 at 12.] Nor is his argument that the Account Transcripts support his version of events "conjecture and speculation," *id.* at 13, because the court cannot disregard his sworn version of events. As the bankruptcy court observed, even if Young "create[d] a narrative behind Account Transcript entries," it is "incorrect that that self-serving testimony is of no evidentiary weight." [Dkt. 8-4 at 75.]

Ultimately, Young's testimony might not prove credible enough to sway the fact finder when weighed against Hernandez's. But credibility determinations remain a task for the fact finder. *Whitaker*, 144 F.4th at 917 (citing *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) ("the court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." (cleaned up)).

### IV. Conclusion

The bankruptcy court's grant of summary judgment is vacated, and the case is remanded for further proceedings.

Enter: 25-cv-6316
Date: January 21, 2026

_____
Lindsay C. Jenkins

7